**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GENERAL HEALTHCARE** : | |
| **RESOURCES, LLC,** : | **CIVIL ACTION** |
| *Plaintiff,* : | |
| : | |
| **v.** : | **No. 19-624** |
| : | |
| **OCCUVAX, LLC,** : | |
| *Defendant.* : | |

## MEMORANDUM

### I.    INTRODUCTION

Currently before the Court is Plaintiff's Motion to Dismiss two of

Defendant's counterclaims against Plaintiff.  Plaintiff argues the gist of the action

doctrine and economic loss doctrine bar Count II (negligence) and Count III

(negligent supervision) contained in Defendant's Counterclaim from proceeding.

For the reasons set forth below, Defendant's counterclaims alleging negligence and

negligent supervision/hiring will be dismissed.

### II.    BACKGROUND

Plaintiff, General Healthcare Resources, LLC ("GHR"), alleges three causes

of action against Defendant, OccuVAX, LLC ("OccuVAX"): 1) breach of contract,

2) Quantum Meruit/unjust enrichment, and 3) account stated.  These counts stem

from the two parties' business and contractual relationship under their "Master

1

Service Agreement" contract. ECF No. 3 at 7-9. OccuVAX, in its Answer, denies all three counts, while bringing forth counterclaims alleging breach of contract, negligence, and negligent hiring/supervision (Counterclaims I, II, and III, respectively) against GHR. ECF No. 16 at 11-17.

GHR is a healthcare staffing agency that provides clients with professional staffing services. ECF No. 3 at ¶ 3. OccuVAX sets up on-site vaccination clinics for its customers and provides the licensed healthcare professionals required to administer vaccines. *Id.* at ¶ 4. GHR and OccuVAX entered into a contract (the "Master Service Agreement") for GHR to "identify and provide AGENCY PROFESSIONALS who are qualified" to administer vaccines at flu vaccination clinics set up by OccuVAX. ECF No. 16, Ex. A. "GHR employed, hired, contracted with, supervised, controlled and/or managed the individuals designed to administer flu vaccines pursuant to the Master Service Agreement." ECF No. 16 at 11, ¶ 10. OccuVAX claims it provided GHR with advance notice of all clinics that needed to be staffed in accordance with the terms of the Master Service Agreement. *Id.* at 11, ¶ 14.

In its Counterclaim, OccuVAX first alleges that GHR failed to staff scheduled clinics with healthcare professionals in violation of the Master Service Agreement, despite having advanced notice of the scheduled clinics. *Id.* at 11, ¶ 16. OccuVAX alleges that this breach of contract resulted in the rescheduling and

2

cancellation of clinics and caused OccuVAX to lose customers.[1] *Id.* at 12, ¶¶ 21-24.

Second, OccuVAX alleges that GHR was negligent when it failed to exercise reasonable care in the performance of the Master Service Agreement. *Id.* at 15, ¶ 34. Specifically, OccuVAX alleges that GHR failed to maintain an accurate staffing schedule for OccuVAX's clinics, ignored communication from OccuVAX regarding staffing of clinics, and failed to adequately communicate about its alleged inability to staff clinics. *Id.* at 15, ¶¶ 36-38. OccuVAX asserts that, as a result of GHR's alleged negligence, it sustained damages totaling $2,902,448.00 for lost business, $178,841.00 for additional costs it incurred in attempts to staff clinics that GHR allegedly failed to staff, and the cost of vaccines and supplies that were not used due to the cancellation of clinics caused by GHR's alleged negligence. *Id.* at 16, ¶ 43.

Third, OccuVAX alleges negligent hiring/supervision against GHR because its customers reported that nurses provided by GHR failed to exercise reasonable care in the administration of vaccines during clinics. *Id.* at 17, ¶¶ 44, 46. Specifically, OccuVAX alleges that the GHR-provided nurses and medical professionals failed to wear gloves, acted unprofessionally, failed to comply with

---

[1] This breach of contract counterclaim is not a subject of Plaintiff's Motion to Dismiss that is currently before the Court.

3

training programs, administered flu vaccines without swabbing the arm with alcohol, administered expired flu shots, and were generally unprepared. *Id.* at 17, ¶ 47. OccuVAX states it reported this allegedly negligent and unprofessional behavior to GHR but GHR continued to staff OccuVAX's clinics with the same nurses. *Id.* at 18, ¶ 51. OccuVAX claims the allegedly negligent hiring/supervision by GHR caused it to lose business and incur additional costs associated with cancelled/rescheduled clinics in the same amount as stated for Counterclaim II. *Id.* at 19, ¶¶ 53-54.

## III. STANDARD OF REVIEW

When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

4

*Twombly*, 550 U.S. at 557, 127 S. Ct. 1955)). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Finally, courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id.* at 787 (alterations in original) (quoting *Iqbal*, 556 U.S. at 675). "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 679).

## IV. DISCUSSION

"Under Pennsylvania law, the gist of the action and economic loss doctrines are 'designed to maintain the conceptual distinction between breach of contract claims and torts claims.'" *Battle Born Munitions, Inc. v. Dick's Sporting Goods, Inc.*, No. 18-1418, 2019 WL 1978429, at \*5 (W.D. Pa. May 3, 2019) (quoting *KBZ Communication Inc. v. CBE Technologies LLC*, 634 F. App'x 908, 910-11 (3d Cir. 2015) (further citations omitted)). The gist of the action doctrine generally

5

precludes plaintiffs from re-casting ordinary breach of contract claims as tort claims. *KBZ Communications Inc. v. CBE Technologies LLC*, 634 F. App'x 908, 909 (3d Cir. 2015) (citing *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). The distinction between tort and contract claims exists due to the different sources of tort and contract duties. *Id.* at 910. Tort duties arise as a matter of social policy, while contract duties arise from a mutual agreement between parties. *See id.* For a tort action to be cognizable as a distinct claim, "the wrong ascribed to [the] defendant[s] must be the gist of the action, the contract being collateral." *Id.*

Under Pennsylvania's economic loss doctrine "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (2009) (quoting *Adams v. Copper Beach Townhome Communities, L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003)). The Pennsylvania Supreme Court recently held that that the application of the economic loss doctrine "turns on the determination of the source of the duty plaintiff claims the defendant owed." *Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018) (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 866 A.2d 270, 288 (2005)). Thus, "if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently

6

of any contractual duties between the parties, then a breach of that duty may support a tort action." *Id.*

In *Downs v. Andrews*, the Third Circuit held that when the duty breached is one created by the terms of the parties' contract the gist of the action doctrine will bar tort claims.[2] *Downs v. Andrews*, 639 F. App'x 816, 820 (3d Cir. 2016) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014)). In dismissing the plaintiff's fraud claims, the Third Circuit reasoned that the duty breached was one created by the terms of the contract, rather than a separate societal duty that exists in torts claims. *Id.* (citing *Bruno*, 106 A.3d at 68). The Third Circuit applied similar reasoning in *KBZ Communications Inc. v. CBE Technologies LLC* when it held that a defendant's duty to pay for the goods it purchased pursuant to a contract was based solely on the contract, not on any larger societal duty embodied in tort law.[3] *KBZ Communications Inc.*, 634 F. App'x at 911.

In the present case, the duties alleged in Counts II and III of OccuVAX's Counterclaim arise under the Master Service Agreement between the

---

[2] In *Downs*, the plaintiff brought tort claims for fraud when the defendants failed to deliver what plaintiffs were due under the terms of the contract. *Downs*, 639 F. App'x at 818-19.

[3] In *KBZ Communications Inc.*, plaintiff and defendant entered into an agreement governing the process by which plaintiff would supply goods and defendant would purchase goods. *KBZ Communications Inc.*, 634 F. App'x at 909. When plaintiff continued to supply goods but defendant failed to pay, plaintiff alleged breach of contract and tort claims, including fraud and negligent misrepresentation. *Id.*

7

parties. *See* ECF No. 3, Ex. A. In Count II of their Counterclaim, OccuVAX sets forth a claim of negligence, alleging that GHR failed to exercise reasonable care in scheduling nurses or medical professionals for OccuVAX's clinics, or maintaining updated schedules and staffing information. *See id.* Further, like the plaintiffs in both *Downs* and *KBZ Communications Inc.*, GHR's duty to OccuVAX to schedule staff for clinics or maintain updated schedules arises from the Master Service Agreement agreed upon by the parties. *See id.* Like the agreement in *Downs* and *KBZ Communications Inc.*, the Master Service Agreement, here, governs GHR's duty to provide adequate services to OccuVAX. *See id.* Similar to the claims in *Downs* and *KBZ Communications Inc.*, Count II of OccuVAX's Counterclaim must be dismissed under the gist of the action doctrine and economic loss doctrine. *See id.*

In Count III of OccuVAX's Counterclaim, OccuVAX sets forth a claim of negligent hiring and supervision, alleging that GHR knew or should have known that nurses and other medical professionals were not performing their duties with reasonable care. *See* ECF No. 3, Ex. A. Like in Count II, GHR's duty to OccuVAX to adequately supervise their staff at clinics arises solely from the Master Service Agreement entered into by the parties.[4] *See id.* Further, like the

---

[4] GHR also argues that Count II of OccuVAX's Counterclaim failed because the Master Services Agreement requires OccuVAX, not GHR, to supervise the Agency Professionals. ECF No. 18-2 at 8. The Master Services Agreement states: "Client retains professional and clinical

8

plaintiffs in both *Downs* and *KBZ Communications Inc.*, GHR has no greater

societal duty to OccuVAX to supervise their staff, other than that created by the

Master Service Agreement. *See id.* OccuVAX's Counterclaim primarily arises

from GHR's alleged failure to provide services agreed to under the Master Service

Agreement, and not a separate tort theory. *See id.*

Although parties may plead in the alternative under Federal Rule of Civil

Procedure 8(d), OccuVAX "has not phrased its claims or factual allegations in the

alternative." *KBZ Communications Inc.*, 634 F. App'x at 913. OccuVAX alleges

that discovery and further factual development of the record is necessary to

determine whether the gist of the action doctrine applies. In further support of this

position, OccuVAX cites to this Court's Opinion in *Anand v. Shapiro*, No. 19-600,

2019 WL 1333878 (E.D. Pa. Mar. 25, 2019) (Kenney, J.). This Court, there,

denied the defendants' motion to dismiss under the reasoning that discovery will

remain essentially the same with or without the claims that defendants were

seeking to be dismissed. *See generally id. Anand*, however, is inapposite to the

instant matter because the discovery necessary for the breach of contract claim,

here, is significantly more limited than the discovery necessary for negligence and

---

management responsibility for the patient and services provided to the patient." ECF No. 3, Ex.
A at 13. As the Court is dismissing Counts II and III under the gist of the action and economic
loss theory, it need not address this issue.

negligent supervision claims. Discovery on the negligence and negligent supervision claims will create a greater discovery burden on the parties, and the necessary discoverable information is not essentially the same as the necessary discoverable information on the breach of contract claim. Furthermore, the record as to whether the gist of the action doctrine and economic loss doctrine bars OccuVAX's negligence and negligent supervision claim does not need to be further developed for this Court to rule, which was a factor in the Court's analysis in *Anand. See id.* at *3.

Secondly, courts in this Circuit have repeatedly invoked the gist of the action doctrine in 12(b)(6) dismissals. *See, e.g., The Knit With v. Knitting Fever, Inc.*, Nos. 08-4221, 08-4775, 2009 WL 3427054, at *7 (E.D. Pa. Oct. 20, 2009) (citing *Metro Auto Sales v. Alfred Stein, Inc.*, No. 05-4721, 2006 WL 237505, at *3 (E.D. Pa. Jan. 30, 2006) (further citations omitted)). Thus, while OccuVAX argues that it states facts sufficient to support its tort claims, the duty such claims are based on is not a larger societal duty embodied in tort law, it is the Master Service Agreement agreed upon by the parties.

## V.    Conclusion

For the forgoing reasons, GHR's Motion to Dismiss (ECF No. 18) is granted. Counts II and III of OccuVAX's Counterclaim are dismissed. An appropriate order will follow.

10

BY THE COURT:

Dated: _____7 - 29 - 19_____

_____
CHAD F. KENNEY, JUDGE

11